**Robert E. Maloney, Jr.**, OSB No. 670856
maloneyr@lanepowell.com
**Pilar C. French**, OSB No. 962880
frenchp@lanepowell.com
**Brian T. Kiolbasa**, OSB No. 112890
kiolbasab@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2105
Facsimile: 503.778.2200

Attorneys for Bank of America, N.A., and
Wells Fargo Bank, National Association

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**COUNTY OF MULTNOMAH,**

Plaintiff,

v.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, a Delaware corporation; **MERSCORP HOLDINGS, INC.**, previously **MERSCORP., INC.; BANK OF AMERICA, N.A., dba BANC OF AMERICA INVESTMENT SERVICES, INC.**, a Florida corporation; **JPMORGAN CHASE BANK, N.A.**, a Delaware corporation; **CITIMORTGAGE, INC.**, a New York corporation; **EVERBANK MORTGAGE COMPANY**, a division of **EVERBANK**, a Florida corporation; **SUNTRUST MORTGAGE, INC.**, a Virginia corporation; **WELLS FARGO BANK, NATIONAL ASSOCIATION**, a foreign corporation; **WMC MORTGAGE CORPORATION**, a California corporation; **CITIZENS BANCORP**, dba **CITIZENS**

Case No. 3:15-cv-01246-PK

DECLARATION OF BRIAN T. KIOLBASA IN SUPPORT OF DEFENDANTS' REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT

PAGE 1 - DECLARATION OF BRIAN T. KIOLBASA IN SUPPORT OF DEFENDANTS' REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0129/6386701.1

**BANK**, an Oregon corporation; and **WEST COAST BANCORP**, dba **WEST COAST BANK**, an Oregon corporation; and **U.S. BANK NATIONAL ASSOCIATION, an Ohio corporation,**

Defendants.

---

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**

Defendant/Counterclaim-Plaintiff,

v.

**COUNTY OF MULTNOMAH,**

Plaintiff/Counterclaim-Defendant,

and

**FEDERAL HOME LOAN MORTGAGE CORPORATION,**

and

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**

Counterclaim-Defendants.

I, Brian T. Kiolbasa, declare and state as follows:

1. I am a member at Lane Powell PC and one of the attorneys for defendants Bank of America, N.A. ("BANA"), and Wells Fargo Bank, N.A. ("Wells Fargo"). I make this declaration based on my own personal knowledge and in support of the following summary judgment reply briefs filed by defendants in this action:

- Reply Brief In Support of Defendants' Motions for Summary Judgment on (1) *Ultra Vires* Lawsuit, (2) County's Conduct, (3) No Damages, (4) Claims I-VI, (5) Declaratory and Injunctive Relief, and (6) Punitive Damages;
- Reply Brief In Support of Defendants Bank of America, N.A. and Wells Fargo Bank, N.A.'s Partial Motion for Summary Judgment – Vicarious Liability;

PAGE 2 - DECLARATION OF BRIAN T. KIOLBASA IN SUPPORT OF DEFENDANTS' REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0129/6386701.1

- Defendant Wells Fargo Bank, N.A.'s Reply in Support of its Motion for Summary Judgment on All Claims.

2. Attached hereto as Exhibit 64 is a true and correct copy of excerpts from the transcript of the deposition of Jeff Sageser, testifying on behalf of Deschutes County, Oregon, which took place on May 22, 2015.

3. Attached hereto as Exhibit 65 is a true and correct copy of excerpts from the transcript of the deposition of Ralph Marle Hoehne, testifying on behalf of Lane County, Oregon, which took place on June 11, 2015.

4. Attached hereto as Exhibit 66 is a true and correct copy of excerpts from the transcript of the deposition of Tassi O'Neil, testifying on behalf of the Oregon Association of County Clerks, which took place on May 29, 2015.

5. Attached hereto as Exhibit 67 is a true and correct copy of excerpts from the transcript of the deposition of Brenda Giesselmann, testifying on behalf of Wells Fargo Bank, N.A., which took place on March 25, 2015.

6. Attached hereto as Exhibit 68 is a true and correct copy of a General Judgment of Foreclosure issued in *Wells Fargo Bank, NA v. Bratcher et al.*, Multnomah County Circuit Court Case No. 1209-11175.

7. Attached hereto as Exhibit 69 is a true and correct copy of a Stipulated General Judgment of Foreclosure issued in *Wells Fargo Bank, NA v. Beard et al.*, Multnomah County Circuit Court Case No. 1207-08910.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 9, 2015

/s/ Brian T. Kiolbasa
Brian T. Kiolbasa

PAGE 3 - DECLARATION OF BRIAN T. KIOLBASA IN SUPPORT OF DEFENDANTS' REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0129/6386701.1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

COUNTY OF MULTNOMAH, )
Plaintiff, )
v. ) No.1212-16328
MORTGAGE ELECTRONIC ) Volume 1
REGISTRATION SYSTEMS, INC., ) Pages 1-99
et al., )
Defendants. )
)

DEPOSITION OF JEFF SAGESER

May 22nd, 2015

Friday

9:08 A.M.

THE VIDEOTAPED DEPOSITION OF JEFF SAGESER was taken at Deschutes Country Offices, 1300 NW Wall Street, 2nd Floor, Bend, Oregon, before Deborah M. Bonds, CSR-RPR, Certified Shorthand Reporter in and for the State of Oregon.

APPEARANCES

For the Witness:
Deschutes County Legal Counsel
1300 NW Wall Street, Suite 205
Bend, Oregon 97701
541/388-6625
BY: DAVID DOYLE
david.doyle@deschutes.org

For Plaintiff County of Multnomah:
D'AMORE LAW GROUP
4230 Galewood Street, Suite 200
Lake Oswego, Oregon 97035
503/222-6333
BY: NICK KAHL
nick@damorelaw.com

For Defendants Bank of America and Wells Fargo:
LANE POWELL PC
601 SW 2nd Avenue, Suite 2100
Portland, Oregon 97204
503/778-2100
BY: PILAR FRENCH
frenchp@lanepowell.com

For Defendants MERS and MERSCORP:
DAVIS WRIGHT TREMAINE
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
503/778-5328
BY: GREGORY A. CHAIMOV
gregorychaimov@dwt.com

(continued)

(continued)

For Defendants U.S. Bank National Association:
DORSEY & WHITNEY LLP
701 5th Avenue, Suite 6100
Seattle, Washington 98104
206/903-8870
BY: AMY STERNER NELSON (via phone)
sterner.amy@dorsey.com

For Defendants WMC Mortgage and JP Mortgage Chase Bank, NA:
BUCKLEY SANDLER, LLP
1250 24th Street NW, Suite 700
Washington, DC 20037
202/349-8061
BY: ANDREW R. LOUIS (via phone)

Also Present:
ROBIN CASSIDY-DURAN, VIDEOGRAPHER
MADOLYN CRUMPTON (via phone)

Reported by:
DEBORAH M. BONDS, CSR-RPR
CC REPORTING & VIDEOCONFERENCING
EUGENE 541/485-0111

INDEX

| WITNESS | PAGE |
|---|---|
| JEFF SAGESER | |
| BY MS. FRENCH | 7,211 |
| BY MR. CHAIMOV | 195 |
| BY MR. KAHL | 198 |

| EXHIBITS | | PAGE |
|---|---|---|
| No. 1 | Letter and deposition subpoena | 10 |
| No. 2 | Deed of trust | 87 |
| No. 3 | Email string | 148 |
| No. 4 | Article | 153 |
| No. 5 | Bend Bulletin article | 155 |
| No. 6 | Email string | 156 |
| No. 7 | Email, 11/19/12 | 158 |
| No. 8 | Email string | 159 |
| No. 9 | Document re: MERS | 160 |
| No. 10 | Email with MERS statistics | 162 |
| No. 11 | Trust deeds with MERS chart | 166 |
| No. 12 | MERS talking points | 167 |
| No. 13 | MERS talking points final | 174 |

(continued)



And I'm just generally speaking here. We will look to see whether or not it's -- if it's legible for us to capture and then reproduce for the public. We will look to see whether or not there are adequate fees for accepting the document for recording.
Q. You mentioned that there was a document submitted in connection with a nonjudicial foreclosure pertaining to proofs of service. Is that correct?
A. No. Affidavit of service.
Q. Okay. There's -- okay. So there's a document submitted for recording in connection with a nonjudicial foreclosure which consists of an affidavit of service.
A. Yes.
Q. Do you review that document to confirm that service has actually been --
A. No.
Q. -- affected on everyone?
A. No.
Q. What you're looking for is different. You have a list of things that you're looking for. Right?
A. Correct.

Q. You're not examining -- you're not examining that document and confirming that what it says actually happened.
A. That's correct.
Q. You are checking to make sure you've got a signature, that it's notarized and acknowledged, that it's legible, and that it's recordable. Is that correct?
A. Reproducible. Eligibility turns into reproducibility and don't forget the fees.
Q. And fees. Okay. And when you get something like an affidavit of service for a nonjudicial foreclosure, do you index it?
A. I typically don't, but our recorders do.
Q. Okay.
A. Our office does.
Q. Okay.
A. One of our recorders does. Let me just also jump in. I will mention that Deschutes County is unique in the sense that we have a program through our software vendor, Helion, we have autoindexing.
Q. I was going to ask you about that.
A. And I would have to say that the rules that have been set up don't favor affidavits.

Q. Okay.
A. So the index is rather incomplete.
Q. So I was -- actually, I think I saw something in the documents about the autoindexing. Can you tell me what that is?
A. Autoindexing is software that our vendor makes available to counties using their recording system that takes a document, OCR's it, in other words, it will scan it for searchable text, and it will apply a set of rules to the text that it finds and probably uses some fancy algorithms to find out how close or approximate names are to descriptive -- other descriptive words to extract an index to be placed in the clerk's searchable index.
Q. What -- let's shift to a deed of trust, so you can tell me what these descriptive words are that the software looks for.
A. It will look for -- primarily what we're doing is populating an index, a direct and indirect index. I believe the statute refers to them as grantors and grantees. And the -- the deed of trust, I would -- I haven't seen the set of rules, but it will look for the words "beneficiary," and it will look for the words "lender." It will look for the words "borrower," "grantor," "grantee." And

there may be some others as well, but I would say that that's probably most of it.
Q. How long have you been doing -- how long has Deschutes County been autoindexing?
A. Autoindexing, I'm guessing -- Oh, boy. Good question. It's been more than about seven years.
Q. Are you one of the only counties that does that?
A. I believe so.
Q. Is the trustee indexed?
A. It is not. The trustee for a deed of trust, we do not index the trustee.
Q. Why is that, if you know?
A. It's more of a historical practice, and so I wouldn't recall why it would have ever been not indexed.
Q. Okay. Is the purpose of the indexing to identify the parties to the trust deed?
A. I would say that's part of it, and more so that it's locatable and searchable by the public.
Q. Okay. So you don't -- the index -- the purpose of the -- tell me what -- you tell me what the purpose of indexing is.
A. For our office and -- well, the purpose of

the index is to help locate a public record. I liken it -- when I've been trying to explain to others, I would use the analogy: If you were to go into a library and you were to try to locate a book --
Q. Uh-huh.
A. -- and you went up to a librarian and said, "Where is this book?" They may not know, but they have a tool to use, and that tool would be a card catalog reader -- for those that are of the old school. And they would locate that card catalog reader, pull out the index card, and there would be a notation of where they could locate that document. So that's the purpose of the index.
Q. Okay. And so as long as the index can tell you where to obtain the record, the index is sound.
MR. KAHL: Objection --
A. I wouldn't --
BY MS. FRENCH:
Q. Go ahead. You can -- he's going to -- he's going to object every now and then when he doesn't like the wording of a question, but you can go ahead and answer.
A. Could rephrase the -- or repeat the

question for me, please?
Q. Well, I'm just trying to understand the purpose of the index. The index is to locate public records and you, being Deschutes County, with Helion autoindex and retrieve certain pieces of information from the original document that's being recorded, whatever that is, so that you can then later find it. Right? If somebody wants to see it. Correct?
A. Correct.
Q. But you may not have every key piece of information in the index that is actually contained in the document. It's just enough so that you can find it. Right?
A. We follow ORS 205.160 in populating our index.
Q. And that statute tells you what to index?
A. Correct.
Q. And is that the statute that speaks in terms of direct and indirect parties?
A. It does.
Q. Do you have a copy of that -- does -- strike that.
Do the clerk's have a copy of that statute on hand?
A. Yes.

Q. So if they need to look at something, it -- well, strike that.
What's the purpose of having it on hand?
A. I'm sorry. Repeat that?
Q. What is the purpose of having that statute on hand?
A. So we can follow the guidance that the legislature has provided us.
Q. Okay. So I'm looking at ORS 205.160 --
A. Let me just mention one additional thing. The Chapter 205 are the duties of the county clerk. So under 205, we would presume that there's guidance for us to follow in carrying out our assignments, if you will.
Q. Okay. And I'm looking at 205.106 [sic] -- you've read this statute before?
A. I have.
MR. DOYLE: 160?
MS. FRENCH: 205.160?
MR. DOYLE: Yeah. You said 106 --
MS. FRENCH: Oh, I'm sorry.
MR. DOYLE: -- so I just wanted to make sure we had the right one.
MS. FRENCH: I'm going to do that a few times today.

BY MS. FRENCH:
Q. Subsection 1 says (reading): The county clerk shall keep a direct general index and an indirect general index in the office of the clerk.
Can you tell me what the difference is between a general index and an indirect general index?
A. Well, if it might be helpful, we do look at Section 7 in following because it does mention that in lieu of the direct -- excuse me -- general indirect and direct, if a county uses, believe it or not, a data processing system, which we do use, then that is the method or the process that we follow. So I believe that it's 7 -- subsection 7 under 160 that we follow.
Q. Okay. And so Subsection 7 -- I'll read it to you just so that we're all talking about the same thing -- I'm sorry. I don't have a copy.
MR. DOYLE: I have a copy here.
MS. FRENCH: Oh, okay. Well, if he wants to look at one, that's fine with me.
BY MS. FRENCH:
Q. (Reading): In lieu of both the direct and -- you've pretty much quoted it

it's available in a bookcase in paper form if it -- if we don't have access to our computers so --
Q. Do you have weekly meetings or staff meetings or anything like that?
A. We have monthly meetings, uh-huh.
Q. Okay. And during those monthly meetings, have you ever discussed MERS?
A. I believe when the two Supreme Court cases were decided, I believe there was a conversation about the Supremes kind of decided on two cases that were involving MERS, and we haven't really done too much to change anything in our practices. And I did also share, I believe, at one meeting that I was going to conference and sharing some information about that.
Q. Okay. And what is it -- I know you've monitored this Brandrup and Niday -- these cases -- but what does the county do to monitor the law with regard to recording issues? Is there any special protocol?
A. No, there isn't. I would find it helpful -- several years ago external auditors would come in and see how we assessed fees and whether those were collected and appropriated to the right agencies, but that hasn't happened for some time.

Q. So talk -- speaking about the fees, how are the fees allocated?
A. The fees -- the recording fees are collected -- I'll just say that the clerk's office will get basically $5 per page of a document to record. The additional fees that would be collected will be for affordable housing; will be for a corner preservation, a surveyor's fee; assessment and taxation, which goes to state, and some is returned.
A portion of the recorder's fee, the $5, there's a 5 percent fee that is dedicated for record preservation, technology, upgrading of the software, storage -- you know, purchase of storage cabinets, whatever the clerk may need, so there's a dedicated fee that's associated with the $5 so --
Q. So the fees are for providing the public service of recording?
A. The clerk's office fee is associated -- yeah.
Q. Okay.
A. I can only speak to that.
Q. Okay. And if somebody -- if I have a trust deed -- if I have a deed of trust, and I want to make sure I have priority, that I stay first in line -- nobody else is loaned against the

property -- I need to record it. Right?
MR. KAHL: I'm going to object that it calls for a legal conclusion.
A. I wouldn't --
BY MS. FRENCH:
Q. You can answer, if you know.
A. Yeah. I wouldn't be able to answer that question.
Q. Okay. You don't know what the purpose of recording a trust deed is?
A. I do.
Q. What is the purpose?
A. I would say for the clerk's office, the purpose for -- and I'm just speaking within the duties of the county clerk -- is to preserve the permanent record, make those records available for public inspection.
Q. But do you --
A. I would -- I would only presume that there are other purposes that other people could speak to.
Q. So you don't know what the purpose of recording a trust deed is?
MR. KAHL: I'm going to object. It's asked and answered.
MS. FRENCH: I just want to confirm

I'm understanding.
MR. DOYLE: Do you understand the question?
A. The purpose of a trust deed to be recorded is to -- well, some may say to perfect the document and make it available for public inspection and to give constructive notice.
BY MS. FRENCH:
Q. Okay. Perfect the document -- what was your second? Make it -- make a record?
A. Make it available for public inspection.
Q. Okay. Make it available for public inspection. And what was the --
A. Which may very well be constructive notice.
Q. And then constructive notice. What's constructive notice?
A. To give someone an understanding that something is -- they're on notice of an event, an occurrence, something exists.
Q. Okay.
A. So to bring someone into knowledge of something or make them aware of something.
Q. And what is perfecting the document?
A. I wouldn't be able to speak to that



because it's not a concern of the clerk's office.
Q. So the clerk's office may record documents and it may have an effect of perfection, but the clerk's office isn't providing any kind of legal stamp or approval indicating that that's in fact what has happened. There's no representation to that effect.
A. Correct.
Q. That would be between the parties to whatever the instrument is. Right? That would be their issue.
A. I wouldn't be able --
MR. KAHL: Object. Calls for a legal conclusion.
MR. DOYLE: Did you complete your answer?
A. I wouldn't be able to speak to that.
BY MS. FRENCH:
Q. Okay. There's no requirement to record a deed of trust, is there?
MR. DOYLE: Do you understand the question? Whose requirement, I guess I would ask. But do you understand the question as phrased?
A. We're not reaching out to make any determination whether something is required or not.



BY MS. FRENCH:
Q. Right.
A. So I can't speak to the requirement that someone may be looking at, whether they're -- so as a receiving party and performing ministerial functions, we're not looking out at someone needing to do something. So if it's requiring them or if it's not requiring them --
BY MS. FRENCH:
Q. Okay. So you don't ever do a land search, make sure people have recorded all documents that need to go -- that need to be recorded for whatever reason? That's not the county's prerogative?
A. Correct.
Q. And if somebody takes out -- if somebody -- if I give Mr. Chaimov a deed of trust against my property, and he decides not to record it, that's his issue. Right?
A. I would say that I would presume it might be his issue.
Q. It wouldn't be an issue for Deschutes County.
A. It wouldn't an issue for Deschutes County.
Q. And Deschutes County wouldn't be banging on his door and demanding that he come record it so



that it can collect the fee.
A. Correct.
Q. Now, you mentioned earlier that there's several ways for presenting documents for recording. You said you in person, mail, or online?
A. Correct.
Q. And what percentage of each method is used?
A. Good question.
Q. If you know.
A. I would say about 60, 65 percent are electronic. The other is -- roughly 25 plus is through the mail, and then the other is over the counter.
Q. Okay. And how long has Deschutes been using the electronic method?
A. It was about the same time -- 2000 -- 2009, 2010. We've been doing it for three, four years.
Q. And there's a time requirement, once a document is recorded and indexed, to return the original. Correct?
A. Correct.
Q. And is it like -- is it ten days?
A. It's ten days.



Q. And has Deschutes County been able to meet that requirement?
A. Yes.
Q. Has there ever been a time when it wasn't meeting that requirement?
A. There may have been a day or two. We pride ourselves in returning original documents, and so there may have been one or two days in about 15 years that we haven't met the ten days.
Q. Okay. And when a deed of trust is presented for recording, who usually presents the document?
A. Usually?
Q. Uh-huh.
A. I have no idea. Title companies is where we get most of our records, the submission of our records, and they submit those electronically, but we get them all over the countryside.
Q. Okay. Are you supposed to keep track of who submits the document to you?
A. Yes.
Q. And -- were you going to add something?
A. I was going to say, we are required in our index of where to return the original document, but we have also who has paid for the document, who has

Page 105

(Beginning Volume 2.)

THE VIDEOGRAPHER: We're back on the record at 12:51 p.m.
BY MS. FRENCH:
Q. Sorgeson [sic]. Right?
A. Sageser.
Q. Saget?
A. Sageser.
Q. Sageser. Mr. Sageser -- sorry about that.
A. You're not alone.
Q. Okay. We're back on the record, and you're still under oath, just as you were this morning. Do you understand that?
A. Yes.
Q. Have you ever had to correct information about a recorded document?
A. We maintain the index.
Q. Okay.
A. So corrections to the index have been made after -- even after verification, if it's brought to our attention that a correction needs to be made, we'll look into it and make the correction.
Q. And how -- and how do you make that correction?

Page 106

A. We pull up the document, and we make a correction to -- most likely a typographical error. That's where most of them are found.
Q. So you can -- you can manually do that right in the -- in the software system?
A. Yes.
Q. You just queue it up and change it and hit save?
A. Yes.
Q. You don't -- does it cost anything to do that?
A. No.
Q. And if there's a concern about having MERS indexed as an indirect party, could you work with Helion to come up with some sort of macro to fix that and to remove them as an indirect party?
MR. KAHL: I'm going to object that that's a vague question.
A. I could work with any of our vendors if a change was necessary. They're very bright folks.
BY MS. FRENCH:
Q. And has Deschutes County inquired about the cost of making that kind of change?
A. No.
Q. Okay. We talked earlier about the purpose

Page 107

of recording, and you said that one of the purposes was perfection?
A. (Witness nodded.)
Q. Deschutes County does not guarantee perfection. Is that correct?
A. Correct.
Q. So is doesn't -- it provides the service of recording, but perfection may be an effect of recording. Is that correct?
A. Could be.
Q. And so would it be fair to say that Deschutes County does not provide the service of perfecting a lien?
A. It's certainly not one of our -- we don't advertise that in any nature, and we wouldn't be asked, "What are you doing here?" We wouldn't -- it wouldn't come to a normal conversation saying, "Well, we're perfecting the documents." That's outside of our -- yeah.
Q. You mentioned Helion as your vendor for indexing?
A. No. They -- our recording system is done by -- is written by Helion, and they have provided a module in which our documents are sort of tested against, if you will, a set of rules called

Page 108

autoindexing so -- and we license that software so --
Q. Okay. And is there -- let me just put it this way. Is that the only service that they provide -- that Helion provides, or do they provide other services to you?
A. There -- they provide an assessment and taxation component to the assessor's office and the -- our tax office. It's called ORCATS.
Q. Do they -- you mentioned that there's some stuff -- that there's some data that you can enter into the system that doesn't go into the index?
A. Yes.
Q. Does Helion provide the software interface for that?
A. Yes.
Q. And when documents are electronically submitted to you, does that come through a Helion interface?
A. Yes.
Q. Is it fair to say that your entire system of recording is based on Helion software?
A. Real property, yes. We have other recording functions that do not use software provided by -- or made by -- developed by Helion.

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

COUNTY OF MULTNOMAH, )
Plaintiff, )
v. ) No.1212-16328
MORTGAGE ELECTRONIC ) Volume 1
REGISTRATION SYSTEMS, INC., ) Pages 1-144
et al., )
Defendants. )
)

ORCP 39C(6)

DEPOSITION OF LANE COUNTY, OREGON

BY RALPH MARLE HOEHNE

Thursday, June 11th, 2015

9:24 A.M.

THE VIDEOTAPED DEPOSITION OF RALPH MARLE HOEHNE was commenced at Lane County Offices, 125 East 8th Avenue, Eugene, Oregon, before Deborah M. Bonds, CSR-RPR, Certified Shorthand Reporter in and for the State of Oregon.

Page 2

APPEARANCES

For the Witness:
LANE COUNTY COUNSELS OFFICE
125 East 8th Avenue
Eugene, Oregon 97401
541/682-6561
BY: STEPHEN E. DINGLE
stephen.dingle@co.lane.or.us

For Plaintiff County of Multnomah:
D'AMORE LAW GROUP
4230 Galewood Street, Suite 200
Lake Oswego, Oregon 97035
503/222-6333
BY: NICK KAHL
nick@damorelaw.com

For Defendants Bank of America and Wells Fargo:
GOODWIN PROCTER
901 New York Avenue, N.W.
Washington, D.C. 20001
202/346-4143
BY: JOSEPH F. YENOUSKAS
jyenouskas@goodwinprocter.com

For Defendants MERS and MERSCORP:
DAVIS WRIGHT TREMAINE
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
503/778-5328
BY: GREGORY A. CHAIMOV
gregorychaimov@dwt.com

(continued)

Page 3

(continued)

For Defendants U.S. Bank National Association:
DORSEY & WHITNEY LLP
701 5th Avenue, Suite 6100
Seattle, Washington 98104
206/903-8870
BY: AMY STERNER NELSON (via phone)
sterner.amy@dorsey.com

For Defendants WMC Mortgage and JP Mortgage Chase Bank, NA:
BUCKLEY SANDLER, LLP
1250 24th Street NW, Suite 700
Washington, DC 20037
202/349-8061
BY: ANDREW R. LOUIS (via phone)

For Defendant CitiMortgage, Inc.:
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
312/701-8821
BY: THOMAS P. EVANS
tevans@mayerbrown.com (via phone)

Also Present:
ROBIN CASSIDY-DURAN, VIDEOGRAPHER
MADOLYN CRUMPTON (via phone)

Reported by:
DEBORAH M. BONDS, CSR-RPR
CC REPORTING & VIDEOCONFERENCING
EUGENE 541/485-0111

Page 4

INDEX

WITNESS.......................................PAGE

RALPH MARLE HOEHNE

| | |
|---|---|
| BY MR. YENOUSKAS | 7,214 |
| BY MR. CHAIMOV | 200 |
| BY MR. KAHL | 200,222 |

EXHIBITS......................................PAGE

| No. | Description | Page |
|---|---|---|
| No. 1 | Declaration of custodian of records | 8 |
| No. 2 | Notice of deposition | 9 |
| No. 3 | Document Receiving, Batching, and Receipting Procedures | 57 |
| No. 4 | Document type list | 67 |
| No. 5 | Lane County website printout | 71 |
| No. 6 | Deed of trust | 83 |
| No. 7 | Screen print of Helion index | 88 |
| No. 8 | Deed of trust | 89 |
| No. 9 | Screen print of Helion index | 92 |
| No. 10 | Email string | 94 |
| No. 11 | Memo and Bev Smith email | 97 |
| No. 12 | Email string, 4/27/11 | 104 |
| No. 13 | Email string, 6/8/11 | 107 |

(continued)



Page 53

A. Yes.
Q. Do you know how other counties treat the indexing of MERS?
A. No.
Q. Okay. No idea at all?
A. Well, no. Actually, no, not really. I mean --
Q. It's not been a topic of discussion with the Clerks Association?
A. Well, I think it has been topic of discussion, but I couldn't sit here and tell you that Douglas County does it in a certain way. I don't know that.
Q. Oh, no. And I'm not asking for specific counties but, for example, do you know that some other counties do it a different way?
A. I would -- it would not surprise me to learn that other counties do things differently. I mean, we hear it from submitters all the time.
Q. Right. So it's not a black-and-white process?
A. No.
Q. Take a quick break. We've been going for a while. Five-minute break?
A. Yes.

Page 54

THE VIDEOGRAPHER: One moment, please.
MR. YENOUSKAS: My voice gets tired.
THE VIDEOGRAPHER: We've off the record at 10:21 a.m.
(Recess: 10:21 to 10:37 a.m.)
THE VIDEOGRAPHER: We're back on the record at 10:37 a.m.
BY MR. YENOUSKAS:
Q. Mr. Hoehne, we didn't discuss one other part of your deed of trust, the trustee.
A. Yes.
Q. You're aware that a trustee is a party to a deed of trust?
A. Yes.
Q. Does Lane County index the trustee in either the grantor or the grantee indices?
A. No.
Q. Why is that?
A. Because they're neither the grantor nor the grantee.
Q. And how was that determination made?
A. I don't know how to answer the question. I mean, we treat -- we treat the grantee as the beneficiary or the lender or the nominee, and the grantor is the borrower. The trustee doesn't fall

Page 55

into either of those categories so we don't index the trustee.
Q. Do you know whether the trustee is granted any rights under a deed of trust?
A. No, not going to make legal determinations.
Q. Okay. Now, you mentioned that the documents are scanned.
A. They are.
Q. How long has that been going on for?
A. Since -- well, since 1999, and we've -- since we really started with using the Helion software system, and we've since gone back to mid-'90s, I think, that we've converted images back.
Q. So there's a process underway to go back into the past and make digitized images?
A. There is.
Q. Okay. And is that sill ongoing?
A. It is, slowly.
Q. Slow process? And is Helion doing that for you?
A. Well, we're doing it ourselves actually.
Q. Okay. And prior to the earliest date that you have digitized images, in what form are the images?

Page 56

A. Microfilm.
Q. Microfilm. And how far do those images go back?
A. Well, they -- they go back to the beginning of recording in Lane County.
Q. So everything has been microfilmed.
A. Yes. Everything has been filmed.
Q. Now, we've been talking about this process of recording documents in which Lane County receives a fee for the service of recording the document.
A. Uh-huh.
Q. Have you ever heard of a service called perfecting a lien?
A. Well, I mean, I've heard the term before.
Q. Does Lane County perfect liens?
A. Not that I know of.
Q. You don't charge a fee for a service called perfecting a lien?
A. No, sir.
Q. Okay. You don't have policies and procedures for perfecting liens?
A. No.
Q. Okay. Not a service the county provides, in other words?
A. No.



IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

COUNTY OF MULTNOMAH, )
)
)
Plaintiff, )
)
v. ) No. 1212-16328
)
MORTGAGE ELECTRONIC REGISTRATION)
SYSTEMS, INC., et al., )
)
Defendants. )

ORCP 39C(6)

DEPOSITION OF THE OREGON ASSOCIATION OF COUNTY CLERKS

BY TASSI O'NEIL

May 29, 2015

Friday

9:12 A.M.

THE VIDEOTAPED DEPOSITION OF TASSI O'NEIL was taken at Local Government Center, 1201 Court Street Northeast, Salem, Oregon, 93701, before Jan R. Duiven, CSR, FCRR, CCP, Certified Shorthand Reporter in and for the State of Oregon.

APPEARANCES

For the Plaintiff:
D'AMORE LAW GROUP
4230 Galewood Street, Suite 200
Lake Oswego, Oregon 97035
503/222-6333
BY: MR. NICK KAHL
nick@damorelaw.com
MS. MADOLYN CRUMPTON
2007 3rd Avenue N.
Birmingham, Alabama 35203
crumptonlaw@gmail.com
205/250-0010
(Appearing by phone)

For Defendants Bank of America, N.A., EverHome Mortgage Company, and Wells Fargo Bank, N.A.:
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109-2802
617/570-1000
BY: MS. YVONNE W. CHAN
ychan@goodwinprocter.com

For Defendants MERS, Inc., and MERSCORP Holdings:
DAVIS WRIGHT TREMAINE LLP
1300 SW 5th Avenue, Suite 2400
Portland, Oregon 97201
503/778-5328
BY: MR. GREGORY A. CHAIMOV
gregorychaimov@dwt.com

For the Deponent:
MR. ROB BOVETT
Association of Oregon Counties
1201 Court Street NE, Suite 300
Salem, Oregon 97301
503/585-8351
rbovett@aocweb.org

APPEARANCES

For Defendant WMC Mortgage Corporation, JPMorgan Chase Bank, N.A., and Chase Home Mortgage Corporation:
BUCKLEY SANDLER
1250 24th Street NW, Suite 700
Washington, DC 20037
202/349-8061
BY: MR. ANDREW R. LOUIS
alouis@buckleysandler.com
(Appearing by phone)

For Defendant CitiMortgage, Inc.:
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
312/701-8821
BY: MR. THOMAS P. EVANS
tevans@mayerbrown.com
(Appearing by phone)

For Defendant U.S. Bank in its capacity as Securitization Trustee:
LARKINS VACURA LLP
1251 SW Morrison Street, Suite 700
Portland, Oregon 97204
503/542-3104
BY: MR. WILLIAM L. LARKINS
wlarkins@larkinsvacura.com
(Appearing by phone)

For Defendant U.S. Bank in its individual capacity:
DORSEY & WHITNEY
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104
206/903-8870
MS. AMY NELSON
sterner.nelson.amy@dorsey.com
(Appearing by phone)

APPEARANCES

For Defendant SunTrust Mortgage:

SNELL & WILMER

One Arizona Center

400 East Van Buren Street, Suite 1900

Phoenix, Arizona 85004

602/382.6310

BY: MS. AMANDA JENKINS

ajenkins@swlaw.com

(Appearing by phone)

The Videographer:

MR. DAVID MCGINNIS

Reported by:

JAN R. DUIVEN, CSR, FCRR, CCP

Q. Is MERS -- or was MERS one of those items?
A. Yes.
Q. Okay. Beginning from around the time that it was formed?
A. Yes. I believe so.
MR. KAHL: We're about an hour in right now. Do you need a break?
THE WITNESS: Sure.
THE VIDEOGRAPHER: And we're going off the record.
(Recess: 10:17 a.m. to 10:26 a.m.)
THE VIDEOGRAPHER: And we're back on the record. Counsel may proceed.
MS. CHAN: Thank you.
BY MS. CHAN:
Q. Ms. O'Neil, do you recall the NACRC affiliate reporting back at any of the OACC meetings during any of the time that you were a member about MERS?
A. Not specifically, no.
Q. What about the -- and I'm going to get this wrong -- but the I --
A. IACREOT.
Q. IACREOT.

A. I don't recall specifically.
Q. And PRIA?
A. I don't recall that specifically either.
Q. Were there discussions at any of the OACC meetings about the loss of recording fees?
A. Yes.
Q. Okay. What was the discussion?
A. That as the keeper of the records, the assignments were not being recorded in the counties' records, therefore, the fees were -- were not being given to the counties to record those documents.
Q. Was there a discussion at those meetings about whether assignments were required?
A. I don't recall.
Q. The discussion about the fees that were then paid, was it a discussion about whether those fees should have been paid or -- or what -- just tell me more about what was discussed.
A. Anytime a document is recorded, there's recording fees that are not only -- that we collect that the county gets a small portion of, and fees that go on to state agencies as well and others. And if those assignments were not

being recorded, those fees were not being passed on to those agencies.
Q. Okay. Who sets the fees?
A. There's statute -- statutes of different fees for different items, as well as counties set some of their own fees.
Q. And the fees are paid each time a document is recorded?
A. Yes.
Q. Was there any discussion about whether there was a way to get those fees?
A. Can you repeat the question?
Q. Sure. You said that there was -- that the discussion was about fees that weren't being paid because assignments weren't being recorded. Was there a discussion about whether there was a way to get the fees to be paid?
A. I believe there was discussion about those documents that hadn't been recorded to see if there was a way to have them be recorded, as well as there were lawsuits within the United States that were happening.
Q. Okay. Tell me what you mean by see if there's a way to have them being recorded.
A. In -- in general, as counties, we like

to have documents recorded within our office as we're the keeper of the records and it keeps the chain of title clean. And if a document's not recorded, we, of course, would like it to be recorded so that when the public or title companies, attorneys, anyone looking at those records would see how that chain of title is complete.
Q. So that's something you would prefer to have happen?
A. Absolutely.
Q. Can you force it?
A. Not specifically, no.
Q. So there are -- there may be other cases not involving MERS where you know that assignments aren't being recorded for a particular property or particular deed of trust. Is there anything you can do about that?
A. No.
MR. KAHL: Wait. When you're asking her can she do it, are you asking her as the president of OACC or as the Tillamook County clerk?
MS. CHAN: Well, she was following up her previous question about what we would --



IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

---

COUNTY OF MULTNOMAH, Case No. 1212-16328

Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; MERSCORP HOLDINGS, INC, previously MERSCORP, INC.; BANK OF AMERICA, N.A., dba BANC OF AMERICA INVESTMENT SERVICES, INC., a Florida Corporation;

(Case caption continues on next page)

---

ORCP 39 C(6) VIDEOTAPE DEPOSITION OF

BRENDA GIESSELMANN

Taken March 25, 2014

Commencing at 9:09 a.m.

REPORTED BY: MARY P. MITCHELL, RDR, CRR, CLR

because she has to keep up with you on the reporting.

A. Sorry.

MR. HEFFERON: No problem.

A. "MERS signing officers should understand the difference between recording and registering a mortgage loan. Mortgages, deed of trust, security deeds are recorded in the applicable public land records. Recording is done in order to perfect a security instrument and to establish priority ahead of other secured creditors. Mortgage loan information is registered on either the MERS System or MERS Commercial, depending on the type of loan. Registration is done in order to track changes in servicing rights and beneficial ownership interests in mortgage loans. Registering the mortgage loan information on the MERS System or MERS Commercial is separate and apart from the function that the county recorders perform."

Q. All right. And then it says underneath that there are three types of loans registered on the MERS System. You have a loan closed on a security instrument where MERS is the original mortgagee, known as a MOM loan. And if I use the term "MOM" today, are you familiar with that?

A. Yes.

Q. All right. And then you have loans where the lien is assigned to MERS post-closing. And that's a non-MOM loan, is that correct?

A. Yes.

Q. All right. And then loans registered solely for tracking where MERS is not the mortgagee or the assignee, known as iRegistration. Are you familiar with all three of those?

A. Yes.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| WELLS FARGO BANK, NA, Plaintiff, vs. DAVID BRATCHER A/K/A DAVID J. BRATCHER; TRACI BRATCHER A/K/A TRACI A. BRATCHER; STATE OF OREGON; AND OCCUPANTS OF THE PREMISES, Defendants. | Case No. 1209-11175 [PROPOSED] GENERAL JUDGMENT OF FORECLOSURE |

The Court finds that an Order granting Plaintiff Wells Fargo Bank, NA's ("Wells Fargo") Motion for Summary Judgment as to Plaintiff's Complaint for Deed of Trust Foreclosure, as against defendants David Bratcher, a/k/a David J. Bratcher, Traci Bratcher, a/k/a Traci A. Bratcher and Occupants of the Premises, was entered on October 3, 2013. Now therefore, the Court being fully advised in the premises and finding that a General Judgment of Foreclosure should be entered in favor of Wells Fargo based upon the following findings, reasons, and conclusions by the Court:

1. David Bratcher and Traci Bratcher executed and delivered to EverHome Mortgage Company a promissory note in the amount of $171,112 (the "Note").

2. At the same time and place as the execution and delivery of the Note, and as part of the same transaction, David Bratcher and Traci Bratcher, the then owner of the real property described in Exhibit 1 attached hereto (the "Property"), executed and delivered a Deed of Trust ("Deed of Trust") to Mortgage Electronic Registration Systems, Inc. solely as nominee for

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

EverHome Mortgage Company. The Deed of Trust was recorded in the official Multnomah County records on October 2, 2008, as document No. 2008-139297.

3. Sometime thereafter the Note and Deed of Trust were sold or assigned to plaintiff, who is the current holder of the Note and assignee of the Deed of Trust, as noted by the Corporate Assignment of Deed of Trust duly recorded in the official Multnomah County records on February 22, 2012, as document No. 2012-020199.

4. David Bratcher and Traci Bratcher breached the terms of the Note and Deed of Trust by failing to make a voluntary monthly payment which was due on October 1, 2011, and making no voluntary payments on the Note and Deed of Trust since that date. Therefore, the Note and Deed of Trust are in default.

5. On or about September 5, 2012, plaintiff commenced this action. On September 5, 2012, plaintiff then caused to be recorded a Notice of Pendency of an Action in the Multnomah County Land Records under Recorder No. 2012-111872 ("Notice of Lis Pendens").

6. An Order placing defendant State of Oregon in default was entered herein on December 24, 2012.

NOW, THEREFORE, IT IS HEREBY ORDERED, DECLARED AND ADJUDGED:

1. Plaintiff is entitled to the entry of judgment against defendants David Bratcher a/k/a David J. Bratcher, Traci Bratcher a/k/a Traci A. Bratcher, State of Oregon, ~~and Occupants of the Premises~~, foreclosing any interest they may claim or have claimed in or to the Property (1429 NE La Mesa Avenue, Gresham, Oregon 97030), more fully described in Exhibit 1 hereto.

2. The Deed of Trust is a valid lien for the amount of plaintiff's judgment as set forth in Paragraph 4 below against the Property and fixtures located thereon and rents and leases relating thereto and situated in Multnomah County, Oregon, and that lien is superior to any interest, lien, or claim of any defendant, their successors, assigns or any purchasers or holders of any interest or encumbrances arising after October 2, 2008, in the Property described in Exhibit 1, or its fixtures, rents, or leases.

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

3. The Deed of Trust is hereby foreclosed and all interests and/or claims held by defendants or their successors or assigns, including purchasers and/or holders of encumbrances, arising on or after October 2, 2008, in the Property or its fixtures, rents, and/or leases shall be sold by the Sheriff of Multnomah County, Oregon, in the manner provided by law and in accordance with the practice of this Court.

4. All rights, title and interest of defendants, and all persons claiming through or under defendants, as purchasers, encumbrancers, or otherwise, are forever foreclosed of all interest, lien or claim in the Property, and every portion thereof, including any statutory right of redemption as defendants may have herein, as provided by Oregon law, which right defendants David Bratcher and Traci Bratcher specifically agree to waive.

5. For purposes of allowing a credit bid to be made at any foreclosure or execution sale, Judgment is entered in favor of plaintiff in the principal amount of $165,430.16, plus accrued interest to August 1, 2013, in the amount of $21,402.65, plus interest on the principal amount from August 2, 2013, at the rate of 6.75% per annum until entry of judgment, plus recoverable costs and fees (including, but not limited to, costs associated with escrow advances and late charges) in the amount of $7,641.08, and attorneys' fees and costs in the amount of $19,768.65, and a Writ of Execution shall issue therefor against the property, fixtures, rents and/or leases and not against any defendant personally.

6. The proceeds of the sale shall be applied first towards the costs of sale, then toward the satisfaction of the judgment amount set forth in Paragraph 4 above, then the surplus, if any, to the clerk of the court to be distributed to any other party or parties as may establish their right and priority thereto.

6. Plaintiff is permitted to become a bidder and purchaser at the foreclosure sale, and plaintiff or any subsequent purchaser shall be entitled to immediate possession of the Property. ~~If the Property is not so vacated, the Court hereby orders the Clerk of the Court to issue a writ of assistance ordering the Sheriff to deliver possession of the Property to plaintiff or to any~~

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

~~purchaser upon written request by plaintiff or purchaser to the Clerk of the Court and without any further order necessary from the Court. The Court shall retain jurisdiction of this matter until David Bratcher and/or Traci Bratcher, and/or any persons occupying the Property with them, have vacated the Property and the sale is completed.~~ CM

7. The defendants and each of them, and all persons claiming through or under defendants, as purchasers, encumbrancers, or otherwise, are forever foreclosed of all interest, lien, or claim in the Property and every portion thereof.

8. Defendants David Bratcher's and Traci Bratcher's Counterclaim is dismissed with prejudice.

9. The Court finds there is no just reason for delay of the entry of judgment and directs entry of final judgment on Wells Fargo's claims against Defendants as set forth herein.

DATED this 12th day of ~~January~~ February 2014.

Christopher Marshall
Honorable Christopher J. Marshall
Circuit Court Judge

Submitted by:

Julie M. Engbloom, OSB No. 066988
Lane Powell PC
Of Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2014, I caused to be served a copy of the foregoing [PROPOSED] GENERAL JUDGMENT OF FORECLOSURE on the following person(s) in the manner indicated below at the following address(es):

Mr. David J. Bratcher
1429 NE La Mesa Avenue
Gresham, OR 97030
Telephone: (503) 970-1107

Pro se defendant

Mrs. Traci A. Bratcher
1429 NE La Mesa Avenue
Gresham, OR 97030
Telephone: (503) 970-1107
E-Mail: traci.bratcher@comcast.net

Pro se defendant

State of Oregon
c/o Department of Justice
1162 Court Street NE
Salem, OR 97301

Occupants of the Premises
1429 NE LaMesa Avenue
Gresham, OR 97030

☐ **by CM/ECF**
☐ **by Electronic Mail**
☐ **by Facsimile Transmission**
☑ **by First Class Mail**
☐ **by Hand Delivery**
☐ **by Overnight Delivery**

Julie M. Engbloom

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

ENTERED
MAR 11 2014
IN REGISTER CDR

FILED
2014 FEB 21 PM 4:04
CIRCUIT COURT FOR MULTNOMAH COUN

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

WELLS FARGO BANK, N.A., its successors in interest and/or assigns,

Plaintiff,

vs.

HAROLD F. BEARD, JR., AKA HAROLD FINDLY BEARD; NATIONAL CITY BANK, NKA PNC BANK, NATIONAL ASSOCIATION; and Occupants of the Premises,

Defendants.

Case No. 1207-08910

STIPULATED GENERAL JUDGMENT OF FORECLOSURE

Plaintiff Wells Fargo Bank, N.A. ("plaintiff") and defendant Harold F. Beard, Jr., aka Harold Findly Beard ("defendant"), acting by and through their respective counsel of record, hereby stipulate that plaintiff is entitled to entry of final judgment in its favor by reason of all requests for relief against all parties and for the following reasons:

1. On or about March 21, 2007, defendant executed and delivered to Directors Mortgage Inc. a promissory note in the amount of $411,975.00 (the "Note").

2. At the same time and place as the execution and delivery of the Note, and as part of the same transaction, defendant, the then owner of the real property located at 6014 Southwest View Point Terrace, Portland, Oregon 97239, and legally described as follows:

Lot 15, Block 5, Southport, Portland, Multnomah County, Oregon

(the "Property"), executed and delivered a Deed of Trust ("Deed of Trust") to Mortgage Electronic Registration Systems, Inc., solely as nominee for Directors Mortgage Inc. and its successors and

assigns. The Deed of Trust was recorded in the official Multnomah County records on March 27, 2007, as document number 2007-053285.

3. Sometime thereafter, the Note and Deed of Trust were sold or assigned to plaintiff, who is the current holder of the Note and assignee of the Deed of Trust, as noted by the Assignment of Deed of Trust duly recorded in the official Multnomah County records on April 20, 2009, as document number 2009-053468.

4. Defendant breached the terms of the Note and Deed of Trust by failing to make a voluntary monthly payment which was due on May 1, 2011, and making no voluntary payments on the Note and Deed of Trust since that date. Therefore, the Note and Deed of Trust are in default.

5. A Limited Judgment of Foreclosure against National City Bank, nka PNC Bank, National Association, was entered herein on March 14, 2013.

6. An Order dismissing defendant Harold F. Beard, Jr.'s Third Counterclaim for common law fraud was entered herein on October 10, 2013.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1. Plaintiff is entitled to the entry of judgment against all defendants herein, foreclosing any interest they may claim or have claimed in or the Property. Plaintiff's judgment against defendant National City Bank, nka PNC Bank, National Association is not for any costs or money based upon the default entered against it.

2. The Deed of Trust recorded in the Multnomah County public records on March 27, 2007, as document number 2007-053285 is a valid lien for the amount of plaintiff's judgment as set forth in the Money Award below against the Property and fixtures located thereon and rents and leases relating thereto and situated in Multnomah County, Oregon, and that lien is superior to any interest, lien, or claim of any defendant in that real property, fixtures, rents, or leases.

3. The Deed of Trust is foreclosed and all interest that defendants, and all claims held by defendants or their successors or assigns, including purchasers and/or holders of

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

encumbrances, and arising on or after March 21, 2007, in the Property or its fixtures, rents, and/or leases shall be sold by the sheriff of Multnomah County, Oregon in the manner provided by law and in accordance with the practice of this Court.

4. Defendant is not entitled to a homestead exemption as against plaintiff's Deed of Trust.

5. Pursuant to the Money Award below, Judgment is entered in the principal amount of $442,495.47, plus escrow advance in the amount of $14,058.28, plus accumulated late charges in the amount of $1,179.84, plus accumulated fees in the amount of $5,297.04, plus interest to September 27, 2013, in the amount of $22,017.62, and from September 28, 2013, at the rate of 2 percent per annum ($24.25 per day) until entry of judgment, as well as $3,544.50 in attorneys' fees, costs, and disbursements, and upon proper application a Writ of Execution shall issue therefor.

6. The proceeds of the sale shall be applied first towards the costs of sale, then toward the satisfaction of the judgment amount set forth in the Money Award below, then the surplus, if any, to the clerk of the court to be distributed to any other party or parties as may establish their right and priority thereto.

7. If the proceeds of sale are insufficient to satisfy plaintiff's Money Award in full, plaintiff has no right to recover the deficiency against defendant pursuant to ORS 86.770(2).

8. Plaintiff is permitted to become a bidder and purchaser at the foreclosure sale and may bid up to the aggregate amount of its Money Award, plus interest, from the date of judgment until sale without advancing any cash except money required for the sheriff's fees and costs of sale.

9. The purchaser of the Property at the sheriff's sale is entitled to exclusive and immediate possession of the Property from and after the date of the sale, and is entitled to such remedies as are available at law to secure possession of the Property, and that the Judgment entered herein shall have the same effect as a writ of assistance, if any of the defendants or any

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

other party or person shall refuse to surrender possession of the property to the purchaser immediately on the purchaser's demand for possession.

10. Defendant Harold F. Beard, Jr.'s remaining Counterclaims are hereby dismissed with prejudice.

**MONEY AWARD**

| | | |
|---|---|---|
| 1. | Judgment Creditor: | Wells Fargo Bank, N.A.<br>c/o Peter D. Hawkes<br>Lane Powell PC<br>601 SW Second Avenue, Suite 2100<br>Portland, OR 97204-3158 |
| 2. | Judgment Creditor's Attorney: | Peter D. Hawkes<br>Lane Powell PC<br>601 SW Second Avenue, Suite 2100<br>Portland, OR 97204-3158<br>503.778.2100 |
| 3. | Judgment Debtor: | Harold F. Beard, Jr.<br>6014 Southwest View Point Terrace<br>Portland, OR 97239<br>Year of birth: 1961<br>Final four digits of Social Security number: 3771<br>Final four digits of driver license number: 1787<br>Attorney: None |
| 4. | Other Person/Entity Entitled to Portion of Judgment: | None |
| 5. | Amount of Judgment: | $463,030.63 |
| 7. | Pre-Judgment Interest: | $22,017.62, plus interest at the rate of $24.75 per day from September 28, 2013 to entry of judgment. |
| 8. | Post judgment Interest: | 9 percent simple interest on the sum of the amounts as set forth in paragraphs 5 and 6 above. |

9. Costs, disbursements, and attorney fees: $3,544.50 on plaintiff's judicial foreclosure claim, pursuant to the terms of the Note and Deed of Trust.

DATED this 20th day of ~~January~~ February, 2014.

Marilyn Litzenberger, Circuit Court Judge

IT IS SO STIPULATED:

LANE POWELL PC

By
Pilar C. French, OSB No. 962880
Peter D. Hawkes, OSB No. 071986
Attorneys for Plaintiff

DATED: 2/18/14

HALL LAW PC

By
Brett J. Hall, OSB No. 035694
Attorneys for Defendant Harold F. Beard, Jr.

DATED: 2/10/14

Submitted by:

LANE POWELL PC
Pilar C. French, OSB No. 962880
Peter D. Hawkes, OSB No. 071986
Attorneys for Plaintiff

PAGE 5 - STIPULATED GENERAL JUDGMENT OF FORECLOSURE

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0140/5915666.1

Exhibit 69
Page 5

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2014, I caused to be served a copy of the foregoing [PROPOSED] STIPULATED GENERAL JUDGMENT OF FORECLOSURE on the following person(s) in the manner indicated below at the following address(es):

Brett J. Hall
Hall Law PC
111 SW Columbia Street, Suite 1010
Portland, OR 97201

- ☐ **by CM/ECF**
- ☐ **by Electronic Mail**
- ☐ **by Facsimile Transmission**
- ☑ **by First Class Mail**
- ☐ **by Hand Delivery**
- ☐ **by Overnight Delivery**

Peter D. Hawkes

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200